**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
-----------------------------------------------------:
                                                     :
Radio Music License Committee, Inc.           :        CIVIL ACTION
                                                     :
                     Plaintiff,               :        No. 2:12-cv-05807-CDJ
                                                     :
            v.                                :        Judge C. Darnell Jones, II
                                                     :
SESAC, Inc., SESAC, LLC, and SESAC            :        ORAL ARGUMENT REQUESTED
Holdings, Inc.,                               :
                                                     :
                     Defendants.              :
                                                     :
-----------------------------------------------------:
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

I.  FACTS ....................................................................................................... 5

    A.  Plaintiff's Complaint and Requests for Injunctive Relief ....................... 5

    B.  Changes to SESAC's Business Practices Eliminate Any Threat of Injury and Provide Plaintiff with All the Relief that It Could Potentially Recover at Trial ... 6

        1.  SESAC Has Eliminated Restrictions on Direct Licensing by Affiliates ................ 6

        2.  SESAC Offers a Robust, Unrestricted Repertory Search Functionality on Its Website ....................................................................................... 7

        3.  SESAC Now Maintains a Downloadable SESAC Repertory Song List on Its Website ....................................................................................... 8

        4.  SESAC Has Implemented a Thirty-Day Grace Period for Unintentional Copyright Infringement ........................................................................ 9

        5.  SESAC Offered to Guarantee Stations a Per-Program License as an Alternative to the Blanket License ......................................................... 10

        6.  SESAC Offered to Arbitrate Licensing Fees and Terms ......................... 10

        7.  SESAC Offered to Pay Plaintiff's Reasonable Costs and Attorneys' Fees .......... 11

II.  PLAINTIFF'S CLAIMS ARE MOOT, DEPRIVING THIS COURT OF SUBJECT MATTER JURISDICTION .............................................................................. 11

    A.  Mootness Divests the Plaintiff of Standing and the Court of Jurisdiction .......... 11

    B.  SESAC Has Offered Complete Relief That Moots the Complaint ..................... 13

        1.  SESAC Eliminated All Restrictions on Direct Licensing by Affiliates, So Its Agreements Can No Longer Be Said to Be de Facto Exclusive Contracts .......... 15

        2.  SESAC Offers a Robust, Unrestricted Repertory Search Function on Its Online Database and SESAC Maintains a Current, Searchable, and Downloadable SESAC Repertory Song List on Its Website .............................. 16

        3.  SESAC Has Committed to a Thirty-Day Grace Period for Unintentional Copyright Infringement by Commercial Radio Stations ......................... 17

        4.  SESAC Offered to Guarantee Stations a Per-Program License as an Alternative to the Blanket License ......................................................... 17

5.   SESAC Offered Binding Arbitration to Determine License Fees and Terms .......18

6.   SESAC Offered to Pay Plaintiff's Reasonable Costs and Attorneys' Fees ...........19

**C.   SESAC's Offer of Complete Relief Moots Plaintiff's Claim Regardless of Whether the Rule 68 Offer Was Accepted** ............................................................ 20

**CONCLUSION** ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alliance to End Repression v. City of Chicago*,
    820 F.2d 873 (7th Cir. 1987) (Easterbrook, J.)............................................... 12-13, 20

*Already, LLC v. Nike, Inc.*,
    133 S. Ct. 721 (2013)...........................................................................................11, 12

*Bennett v. Corr. Med. Servs., Inc.*,
    No. 02-4993, 2008 U.S. Dist. LEXIS 39020 (D.N.J. May 14, 2008).....................................13

*Concord v. Boston Edison Co.*,
    915 F.2d 17 (1st Cir. 1990) (Breyer, J.).....................................................................19

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013)..........................................................................................12

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000).....................................................................................13

*In re Motorola Mobility LLC, & Google Inc.*,
    C-4410, 2013 WL 3944149 (F.T.C. July 23, 2013)................................................................18

*Jonas v. Gold*,
    No. 13-2949, 2014 U.S. Dist. LEXIS 138472 (D. N.J. Sept. 30, 2014) ...................................1

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ..............................................................................1, 13

*Livingston v. Appel*,
    No. 11-2764, 2014 U.S. Dist. LEXIS 168579 (E.D. Pa. Dec. 5, 2014) (Baylson, J.) ..............4

*Meredith Corp. v. SESAC LLC*,
    No. 09-cv-09177-PAE (S.D.N.Y. Oct. 15, 2014) ........................................................ *passim*

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
    555 U.S. 438 (2009).............................................................................................19

*Rand v. Monsanto Co.*,
    926 F.2d 596 (7th Cir. 1991) ...................................................................................12

*Sutton v. Rasheed*,
    323 F.3d 236 (3d Cir. 2003).....................................................................................12

*Symczyk v. Genesis HealthCare Corp.*,
    656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013).......1, 12, 13, 20

*United States v. Comcast Corp.*,
   808 F. Supp. 2d 145 (D.D.C. 2011) ......................................................................18

*Urena v. Ebbert*,
   No. 1:14-cv-130, 2014 U.S. Dist. LEXIS 21074 (M.D. Pa. Feb. 20, 2014) .............................4

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...............................................................................................3, 19

*Weiss v. Regal Collections*,
   385 F.3d 337 (3d Cir. 2004) ...............................................................................13

*Weitzner v. Sanofi Pasteur, Inc.*,
   7 F. Supp. 3d 460, 463 (M.D. Pa. 2014) ........................................ 11-12, 13, 14, 15

## Statutes

Sherman Act § 2 ....................................................................................................5

## Other Authorities

Federal Rule of Civil Procedure 12(b)(1) ............................................................1

Federal Rule of Civil Procedure 12(h)(3) ............................................................1

Federal Rule of Civil Procedure 68 ........................................................... *passim*

U.S. Const. art. III ...........................................................................................11, 21

U.S. Department of Justice, "Antitrust Consent Decree Review" (2014) ....................................18

This action is moot.  In a Rule 68 Offer of Judgment, tendered on January 6, 2015 (the "Offer of Judgment") (Exhibit A to the Declaration of Patrick Collins (the "Collins Dec.")), defendants offered plaintiff complete relief — indeed, relief that is broader than the relief requested by plaintiff and that goes beyond what plaintiff could reasonably obtain at trial.  There is thus no live case or controversy between the parties.  Accordingly, Defendants SESAC, Inc., SESAC, LLC, and SESAC Holdings, Inc. ("SESAC") move to dismiss, with prejudice, Plaintiff Radio Music License Committee, Inc.'s ("RMLC's") single remaining claim — Count III — for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).[1]

## PRELIMINARY STATEMENT

In its Complaint, plaintiff asked this Court to enjoin SESAC to:  i) prohibit de facto exclusive contracts with copyright holders; ii) offer alternatives to the blanket license; and iii) establish a judicial rate-making procedure comparable to a rate court.  Plaintiff also asked for expenses and costs of suit, including reasonable attorneys' fees.  These are the only items of relief plaintiff has sought (other than a perfunctory request for "such additional relief as the Court may deem proper").  Compl. at 29-30, ECF No. 1.  Additionally, plaintiff complained that SESAC made its repertory unavailable.  *Id.* ¶ 32.  On January 6, 2015, in its Offer of Judgment, SESAC offered to plaintiff all of the relief that it could reasonably hope to obtain at trial, and more.  Specifically, the Offer of Judgment tendered to plaintiff a proposed injunction affording

---

[1]     On this motion, the court may consider evidence outside the pleadings.  *See Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  The Court is "entitled to weigh and evaluate the evidence bearing on the jurisdictional dispute," including an unaccepted Rule 68 offer of judgment.  *Symczyk*, 656 F.3d at 191 n.4 ("Because defendants' motion to dismiss was based on facts outside the pleadings (*i.e.*, their Rule 68 offer of judgment), the trial court was entitled to weigh and evaluate the evidence bearing on the jurisdictional dispute") (decided under Rule 12(b)(1)).  *See also Jonas v. Gold*, No. 13-2949, 2014 U.S. Dist. LEXIS 138472, at *10-11 (D. N.J. Sept. 30, 2014) (considering evidence outside the pleadings under Rule 12(h)(3)).

the following specific items of relief — most of which SESAC has already implemented independent of the Offer of Judgment:

- **Elimination of All Direct Licensing Restrictions.**  SESAC has already eliminated all direct licensing terms from supplemental contracts with all of its affiliates, and in its Offer of Judgment it offered to memorialize this in an injunction until December 31, 2025. Because SESAC's affiliates are completely free to enter into a direct license with any entity, including plaintiff's members, affiliate contracts can no longer be characterized as de facto exclusive.  This moots the first component of plaintiff's claim for relief.[2]

- **Genuine Alternative to the Blanket License.**  SESAC already offers a genuine alternative to the blanket license, and in its Offer of Judgment it offered to guarantee availability of a per-program license through 2025.  For more than three decades, SESAC has offered a 75% discount off the blanket license fee — without any administrative or overhead costs to the station — to all commercial radio stations that have an all-talk format (e.g., sports, news, religious, and talk programming).  Most all-talk radio stations — more than 1,850 of them — already take advantage of this All-Talk Amendment.  In its Offer of Judgment, SESAC went even further: First, the Offer of Judgment provided that, effective immediately, plaintiff may choose either the All-Talk Amendment or a per-program license that mimics the terms that Broadcast Music, Inc.

---

[2]     Moreover, this item of relief is separately the subject of a settlement agreement through 2035 between SESAC and the broadcast television industry, and that agreement is expected to be approved by the United States District Court for the Southern District of New York on March 13, 2015.  *Meredith Corp. v. SESAC LLC*, No. 09-cv-09177-PAE (S.D.N.Y. Oct. 15, 2014) ECF No. 175-1 (Collins Dec. ¶ 7 & Exhibit C) (the "TV Settlement Agreement"); *id.*, ECF No. 205 (October 31, 2014 Preliminary Approval Order) at 4.  The TV Settlement Agreement is ultimately enforceable in court.  *Id.* ECF No. 175-1 at ¶ 3(o).  Therefore, plaintiff cannot reasonably expect to receive injunctive relief to the same effect in this action after March 13th because there will be no irreparable injury if a redundant injunction for the same relief does not issue from this Court.

("BMI") currently offers to commercial radio stations.  Second, in the Offer of Judgment, SESAC agreed to negotiate the terms of a per-program license with plaintiff and, if negotiations were to fail, have the per-program license terms determined in binding arbitration.  This moots the second component of plaintiff's claim for relief.

- **Binding Arbitration.**  SESAC offered to negotiate licensing fees and terms directly with plaintiff, and failing agreement, submit the issues to binding arbitration.  This is a procedure comparable to a rate court, obviating the need for such a court.  This moots the third component of plaintiff's claim for relief.[3]

- **Fully Accessible Repertory.**  SESAC has already implemented measures making its repertory fully accessible.  SESAC recently added a downloadable SESAC Song List ("Song List") to its website, and it has removed previous search limits on its preexisting repertory database.  SESAC uses reasonable efforts to keep the Song List current.  In its Offer of Judgment, SESAC offered to memorialize this in an injunction.  This moots plaintiff's complaint that SESAC made its repertory unavailable.

- **30-Day Grace Period for Unintentional Unlicensed Uses.**  SESAC has already committed that it will not claim copyright infringement for any use of a musical work during the first thirty days the work is posted to the SESAC Song List, provided the user, acting in good faith, was unaware that SESAC represented the copyright holder.  SESAC also offered to

---

[3]     The local television industry, in its settlement with SESAC, agreed to binding arbitration of licensing fees and terms, in lieu of a rate court, *id.*, clearly recognizing the functional equivalence of such procedures.  Both the Department of Justice and the Federal Trade Commission have endorsed arbitration for license rate disputes in analogous circumstances, and are currently considering eliminating the ASCAP and BMI rate courts.  Moreover, courts are ill-suited "to act as central planners, identifying the proper price, quantity, and other terms of dealing." *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).

memorialize this in an injunction.  This is responsive to stations' concerns about unintentional infringement and affords relief above and beyond that requested by plaintiff.

- **Reasonable Costs and Attorneys' Fees.**  SESAC offered to pay plaintiff's reasonable costs and attorneys' fees.  Plaintiff's request for fees and costs is thus moot.

* * *

SESAC's changes to its business practices moot this case as a matter of law.  As part of its Offer of Judgment, SESAC offered to consent to an injunction from this Court mandating that all of these changes — most of which have already been implemented — remain in place for almost eleven years.  Had it been accepted, the injunction would have been judicially enforceable by plaintiff.  Indeed, as noted, SESAC is already obliged to keep its affiliate agreements free of any direct licensing restrictions under the terms of an agreement settling a class action lawsuit brought against SESAC on behalf of the broadcast television industry that is expected to be approved by the U.S. District Court for the Southern District of New York on March 13, 2015.[4]

The former business practices challenged by plaintiff by and large no longer exist, and under the Offer of Judgment they could not be reinstated because they would be judicially enforced by an injunction through 2025.  Moreover, independently, it would be manifestly against SESAC's commercial interests to reinstate the challenged former business practices, because the policies and practices that have taken their place are relied on by SESAC's licensee and affiliate customers and benefit SESAC itself.  *See* Collins Dec. ¶¶ 3, 8, 10, 12, 15.

---

[4]     *Meredith Corp. v. SESAC LLC*, No. 09-cv-09177-PAE (S.D.N.Y. Oct. 15, 2014) ECF No. 205 (October 31, 2014 Preliminary Approval Order) at 4.  This Court may take judicial notice of the records of another court.  *Livingston v. Appel*, No. 11-2764, 2014 U.S. Dist. LEXIS 168579, *4 n.1 (E.D. Pa. Dec. 5, 2014) (Baylson, J.) (taking judicial notice of contents of state court website); *Urena v. Ebbert*, No. 1:14-cv-130, 2014 U.S. Dist. LEXIS 21074, at *2 n.2 (M.D. Pa. Feb. 20, 2014) (taking judicial notice of contents of the dockets of the Second Circuit and the Southern District of New York).

Therefore, the old business practices challenged by plaintiff cannot restrain competition and pose no threat of injury to plaintiff, now or in the future.

<u>The mootness of plaintiff's claim does not depend on whether plaintiff accepted SESAC's Offer of Judgment.</u>   Third Circuit law is clear that once a plaintiff is offered full relief, and recurrence of the harm is unlikely, the Court must dismiss the claim for lack of subject matter jurisdiction.  Consequently, the Complaint should be dismissed for lack of subject matter jurisdiction.

## I.    FACTS

### A.    Plaintiff's Complaint and Requests for Injunctive Relief

Count III alleges monopolization in violation of Sherman Act § 2.  Plaintiff complains that commercial radio stations "have no practical or economically viable alternative to SESAC's blanket license" without a per-program or carve-out alternative, and because SESAC "refuses to make the full content of its repertory available.…"  Compl. ¶ 97.  Plaintiff also complains that SESAC has "de facto exclusive contracts with its affiliates that make it economically irrational for them to grant direct licenses to RMLC's members."  *Id.* ¶ 98.  Plaintiff seeks injunctive relief "(i) requiring SESAC to submit to a judicial rate-making procedure comparable to what the consent decrees regulating ASCAP's and BMI's behavior impose; (ii) enjoining SESAC from entering into de facto exclusive contracts with copyright holders; and (iii) requiring SESAC to make available economically viable alternatives to blanket licenses, such as per-program licenses, blanket carve-out fees, and commercial-only licenses."  *Id.* at 29-30 (Relief Sought).  It also seeks "expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and … such additional relief as the Court may deem proper."  *Id.* at 30.

5

B.     **Changes to SESAC's Business Practices Eliminate Any Threat of Injury and Provide Plaintiff with All the Relief that It Could Potentially Recover at Trial**

1.     *SESAC Has Eliminated Restrictions on Direct Licensing by Affiliates*

SESAC's affiliates are already completely free to enter into direct licenses. Consequently, the affiliates' agreements with SESAC cannot be characterized as de facto exclusive.  Although the challenged provisions had not been enforced in years, on November 4, 2014, SESAC formally eliminated all restrictions on direct licensing in all of its affiliates' supplemental contracts.  (Collins Dec. ¶¶ 4-6 & Exhibit B).  Consequently, SESAC affiliates may enter into or renew direct licenses with any entity at any price they wish, without any prohibitions, penalties, requirements, or restrictions.

SESAC implemented these changes to satisfy its obligations under the TV Settlement Agreement, which is enforceable through December 31, 2035.  Specifically, under that agreement, SESAC:

> shall not enter into or extend any agreements with any of its publisher or writer affiliates that: (i) Expressly prohibit any affiliate from issuing a public performance rights license directly … or (ii) Have the effect of interfering with the ability of any affiliate to issue a public performance rights license directly …

Collins Dec. Exhibit C, ¶ 3(n).  Notably, broadcasters owning approximately 232 of the 1304 television stations covered by the TV Settlement Agreement also own approximately 367 commercial radio stations.  (*See* Collins Dec. ¶ 8 & Exhibit D).

Moreover, SESAC's Offer of Judgment provided for entry of an injunction through 2025 by this Court that would, among other things, prohibit direct licensing provisions in affiliate contracts that prohibit or interfere with the ability of an affiliate to directly issue a public performance rights license:

**Affiliate Agreements.**  SESAC shall not enter into agreements with its affiliated composers, producers and music publishers ("affiliates"), or extend the term of any existing agreements with affiliates, that:

A.   expressly prohibit any affiliate from issuing a public performance rights license directly … or

B.  have the effect of interfering with the ability of any affiliate to issue a public performance rights license directly … as a result of, including but not limited to by,

       a.  imposing penalties on the affiliate for issuing a direct license, or

       b.  requiring that proceeds of any sales of direct licenses be forfeited to SESAC except that, to the extent SESAC advances monies … in the form of a guarantee, advance, or otherwise, SESAC shall be permitted to enter into agreements … requiring that a portion of the proceeds of any sales of direct licenses by those affiliates not to exceed eighty (80) percent be directed to SESAC for its benefit up until said guarantees … have been recouped; or

       c.  making the affiliate refer requests to renew existing direct licenses, or for new direct licenses, to SESAC in the first instance, or

       d.  permitting the affiliate to issue renewals, or new direct licenses, only if SESAC did not reach agreement with the affiliate, and then only at a price equal to that for which SESAC would offer such a licensee.

Collins Dec. Exhibit A, ¶ 7.a.i.  This is relief above and beyond that which the RMLC could

reasonably expect to recover after March 13, 2015, when the TV Settlement Agreement —

which contains identical provisions — is expected to be approved.

      2.    *SESAC Offers a Robust, Unrestricted Repertory Search Functionality on Its Website*

On October 10, 2014, SESAC removed the previous limit of 100 searches per day per

user from the preexisting repertory search functionality on its website.  Declaration of Robert

Sewell ("Sewell Dec.")  ¶ 3; Collins Dec. ¶ 11.  *See*

http://www.sesac.com/Repertory/Terms.aspx.  This search function allows unlimited searches of

SESAC's repertory database by song, writer, publisher or artist, and includes the writers'

alternative names in the search.  (For example, a search for Swizz Beatz — the stage name of a

7

prominent hip-hop songwriter and solo artist affiliated with SESAC — would also search for his given name Kasseem Daoud Dean and for Kasseem Dean.)  *See* Sewell Dec. Exhibit 1 (sample search results).

Furthermore, SESAC's Offer of Judgment contemplated entry of an injunction through 2025 that would require SESAC to grant unlimited searches to a user on its repertory search database and require SESAC to use reasonable efforts to keep that repertory search database current:

> SESAC will not reinstate the former 100-search-per-day limitation on its preexisting website Repertory Search database … and no such limitation will be imposed on searches of the SESAC Song List.  SESAC will use reasonable efforts to keep current the information in both the SESAC Song List and its preexisting Repertory Search database …

Collins Dec. Exhibit A, ¶ 7a.iv.

### 3.    *SESAC Now Maintains a Downloadable SESAC Repertory Song List on Its Website*

As of December 11, 2014, SESAC added to its website the SESAC Song List, a downloadable repertory list of musical works represented by SESAC.  Sewell Dec. ¶ 4 & Exhibit 2 (excerpt); *http://www.sesac.com/Repertory/RepertorySongListTerms.aspx*.  The Song List includes song titles, SESAC-affiliated songwriters and SESAC-affiliated publishers for each musical composition represented by SESAC, including copyrighted arrangements of works in the public domain.  Sewell Dec. ¶ 4.  SESAC uses reasonable efforts to keep the information contained on the Song List current.  *Id.*; Collins Dec. ¶ 11.  The date and time of the most recent update to the list is available on SESAC's website.  Sewell Dec. ¶ 4.  The Song List is downloadable in .pdf format as an "enhanced song list" or as a "simple song list."  *Id.*  Currently, the full "simple song list" is 30,208 pages long and the full "enhanced song list" is 30,982 pages

long.  *Id.*  The SESAC Song List allows a user to view all song titles that begin with any letter of

the alphabet, or to produce a list by song title, publisher name or writer name.  *Id.*

SESAC's Offer of Judgment included entry of an injunction through 2025 requiring

SESAC to maintain the Song List on its website, with the features described above, and

obligating SESAC to use reasonable efforts to keep the Song List current:

> SESAC shall maintain on its website the recently-added SESAC Song List, which
> will contain the titles of musical works in SESAC's repertory and the names of
> SESAC affiliates associated with those musical works, and which will be
> searchable by song title or affiliate and will be downloadable.  SESAC will not
> reinstate the former 100-search-per-day limitation on its preexisting website
> Repertory Search database … and no such limitation will be imposed on searches
> of the SESAC Song List.  SESAC will use reasonable efforts to keep current the
> information in both the SESAC Song List and its preexisting Repertory Search
> database …

Collins Dec. Exhibit A, ¶ 7.a.iv.

4.    *SESAC Has Implemented a Thirty-Day Grace Period for Unintentional Copyright Infringement*

From the date that a musical work is first posted to the Song List, SESAC grants users a

thirty-day grace period to obtain a public performance license.  Within that thirty-day period,

SESAC will not claim copyright infringement if a user, acting in good faith, was unaware that

SESAC represented the copyright holder.  *See* Collins Dec. ¶ 13 & Exhibit E (available at

*http://www.sesac.com/Repertory/RepertorySongListTerms.aspx*).  This thirty-day grace period

was announced on SESAC's website on December 11, 2014.  Collins Dec. ¶ 13.

SESAC's Offer of Judgment included entry of an injunction through 2025 requiring that

SESAC grant commercial radio stations this thirty-day grace period:

> SESAC will grant Commercial Radio Stations acting in good faith a 30-day grace
> period beginning on the day that a musical work is first posted to the Song List or
> Repertory Search database to obtain a license from SESAC covering that musical
> work, during which 30-day period SESAC will not claim copyright infringement
> on the part of a Commercial Radio Station that performed SESAC music,

provided that such station acted in good faith and was unaware that the musical work is within SESAC's repertory.

Collins Dec. Exhibit A, ¶ 7.a.iv.

> 5. *SESAC Offered to Guarantee Stations a Per-Program License as an Alternative to the Blanket License*

SESAC's Offer of Judgment included entry of an injunction through 2025 guaranteeing a choice to all commercial radio stations of a per-program license as an alternative to SESAC's blanket license. The terms of the per-program license would either be negotiated by plaintiff and SESAC or, failing that, determined in binding arbitration. Pending the first arbitration, the plaintiff was given the option of choosing either SESAC's widely-used All-Talk Amendment or the per-program license terms currently offered by BMI:

> SESAC shall offer all Commercial Radio Stations, in addition to a blanket license, a per-program license, the terms of which shall be determined in binding arbitration conducted pursuant to Paragraph 7(a)(iii); unless otherwise agreed to by the RMLC and SESAC, until an award is rendered in the first industry-wide arbitration conducted pursuant to Paragraph 7(a)(iii), SESAC shall offer to the industry composed of all Commercial Radio Stations, in addition to a blanket license a per-program license, the terms of which shall be, at the option of the Plaintiff, either (but not both) of:
>
> > A.  SESAC's All-Talk Amendment (which more than 1,850 Commercial Radio Stations currently take advantage of, receiving a 75% discount without the administrative or overhead costs associated with a per-program license of the sort offered by BMI and ASCAP) or
> >
> > B.  The same as the per-program license terms offered on this date by Broadcast Music, Inc. ("BMI"), in its Blanket/Per-Program License Agreement….

Collins Dec. Exhibit A, ¶ 7.a.ii.

> 6. *SESAC Offered to Arbitrate Licensing Fees and Terms*

SESAC's Offer of Judgment provided for entry of an injunction requiring that license fees and terms through 2025 be determined by binding arbitration, unless otherwise agreed by the RMLC and SESAC. License fees from an expiring license period would continue on an

interim basis and any commercial station that continued to make license fee payments would be

treated as fully licensed and would be safe from any risk of copyright infringement:

> License fees and terms for performance licenses to the music in SESAC's repertory by Commercial Radio Stations ("License Fees and Terms"), unless previously agreed on in negotiation by the RMLC and SESAC, shall be determined by binding arbitration between the RMLC and SESAC, with each arbitration setting License Fees and Terms for a two-year period….

> D.  The License Fees and Terms governing the last year of the expiring license period shall continue on an interim basis such that any Commercial Radio Station that continues to make payments due under its existing license … shall be treated by SESAC as fully licensed and SESAC shall not sue or threaten to sue any such Commercial Radio Station for copyright infringement.

Collins Dec. Exhibit A, ¶ 7.a.iii.

 7.     *SESAC Offered to Pay Plaintiff's Reasonable Costs and Attorneys' Fees*

SESAC's Offer of Judgment includes a commitment to pay plaintiff's reasonable costs,

including reasonable attorneys' fees, accrued as of January 6, 2015.  The Offer of Judgment

states:  "SESAC will pay Plaintiff's reasonable costs, including reasonable attorney's[sic] fees,

accrued as of the date of this offer."  *Id.* ¶ 7.b.

## II.    PLAINTIFF'S CLAIMS ARE MOOT, DEPRIVING THIS COURT OF SUBJECT MATTER JURISDICTION

### A.     Mootness Divests the Plaintiff of Standing and the Court of Jurisdiction

Under Article III of the Constitution, federal courts may only adjudicate actual cases or

controversies.  *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013).  Litigants must be

threatened with or suffer an actual injury traceable to defendants' actions and must seek relief

that is capable of being granted by a court.  *Id.*  The Article III requirement must be satisfied at

every stage of judicial proceedings.  *Id.*  If it is not, the court lacks power to adjudicate the case

and must dismiss for lack of subject matter jurisdiction.  *E.g., Weitzner v. Sanofi Pasteur, Inc.*, 7

11

F. Supp. 3d 460, 463 (M.D. Pa. 2014).  At all times, plaintiffs bear the burden of establishing that the court has subject matter jurisdiction.  S*ee Symczyk*, 656 F.3d at 191.

An offer of complete relief moots the plaintiff's claim.  *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987) (Easterbrook, J.) (referencing the established rule that "a party must have an economic dispute with the defendant, one surviving the offer of settlement, to be allowed to press on in the face of the defendant's willingness to satisfy the plaintiff's initial demand.").  The claims are mooted even if the plaintiff does not accept an offer that fully satisfies those claims.  *Symczyk*, 656 F.3d at 195 ("[W]hether or not the plaintiff accepts the offer, no justiciable controversy remains when a defendant tenders an offer of judgment under Rule 68 encompassing all the relief a plaintiff could potentially recover at trial.") (citing Judge Easterbrook's decision to this effect in *Rand v. Monsanto Co*., 926 F.2d 596, 598 (7th Cir. 1991)).  This is binding Third Circuit law.  Moreover, as the Supreme Court recently observed, all Circuits agree that "a plaintiff's claim may be satisfied even without the plaintiff's consent."  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 n.4 (2013).

Even if full relief has been offered, a party claiming mootness must also establish that "the allegedly wrongful behavior could not reasonably be expected to recur."  *Nike*, 133 S. Ct. at 727 (citation and internal quotations omitted).  As the Supreme Court has held, the test is simple: "Could the allegedly wrongful behavior reasonably be expected to recur?"  *Id.* (holding that the case was moot because of defendant's unconditional and irrevocable covenant to plaintiff); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (holding that a claim for injunctive relief was moot based on representations that a policy would not be rescinded and administrative incentives that made it unlikely the policy would be reversed); *Alliance to End Repression*, 820 F.2d at 877-78 (concluding that recurrence of the dispute was unlikely because defendant would

have to renounce its obligations under a consent decree); *Bennett v. Corr. Med. Servs., Inc.*, No.
02-4993, 2008 U.S. Dist. LEXIS 39020, at *15-19 (D.N.J. May 14, 2008) (holding that claims
for injunctive relief were moot based on affidavits stating that the policy requested by plaintiffs
was adopted, implemented, and being monitored).

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the
court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d
Cir. 2000) (italics omitted).  Factual attacks "challenge 'the existence of subject matter
jurisdiction in fact, irrespective of the pleadings....'" *Lawrence*, 919 F.2d at 1529 (citation
omitted).  The trial court's "factual evaluation [of subject matter jurisdiction] 'may occur at any
stage of the proceedings.'" *Symczyk*, 656 F.3d at 191 n.4 (citation omitted).  Here, SESAC has
offered complete relief to the plaintiff, and the challenged conduct cannot reasonably be
expected to recur.

B.  **SESAC Has Offered Complete Relief That Moots the Complaint**

In the Third Circuit "'[a]n offer of complete relief will generally moot the plaintiff's
claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation.'"
*Weitzner*, 7 F. Supp. 3d at 464 (citing *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir.
2004)).  Thus, the threshold question is whether SESAC's Offer of Judgment — and changes to
its business practices — provide plaintiff with complete relief for its monopolization claim.
They do.

In *Weitzner*, plaintiffs brought claims for damages and injunctive relief on behalf of
themselves as well as a putative class.  *Id.* at 461.  "Defendants made a Rule 68 Offer of
Judgment to each Plaintiff, claiming to 'satisfy the claims of Plaintiffs ... and provide each
Plaintiff with the maximum relief available under the law ... were they to prevail in this case.'"
*Id.* at 462.  Plaintiffs did not respond to the offer or move for class certification before

13

defendants filed a motion to dismiss.  *Id.*  The court evaluated both the request for damages and the request for an injunction to determine whether defendants' Rule 68 offer of judgment provided plaintiffs with complete relief.  *Id.* at 464-65.  (The court considered the *Weitzner* plaintiffs' individual claims separately from the putative class claims.  Because in the Third Circuit an offer of judgment can moot individual claims in a class action but not the putative class claims, only the court's analyses of the individual claims is relevant here.  *Id.* at 463.)

The *Weitzner* Court determined that the plaintiffs' claims were moot, and explained the difference between an offer of complete versus incomplete relief:  "[I]f the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot."  *Id.* at 464 (citations omitted).  The *Weitzner* defendants had offered treble damages for eleven violations under the statute (plaintiffs had claimed 10,000 violations for the class).  *Id.* at 464-65. Further, defendants had agreed "not to transmit any facsimile advertisements in violation of the [Telephone Consumer Protection Act] to Plaintiffs."  *Id.*  The offer included accrued costs.  *Id.* at 465.  This relief was the maximum statutory relief available, and the individual plaintiffs did not claim they were entitled to any more damages than offered.  *Id.*  The court thus concluded "that Defendants' Rule 68 offers provided for complete relief to Plaintiffs as individuals acting in their personal capacities."  *Id.* (italics omitted).

The same reasoning controls here.  Plaintiff's sole remaining Count challenges three of SESAC's alleged business practices: (1) de facto exclusive contracts with affiliates, (2) unavailability of SESAC's repertory, and (3) the lack of a per-program license alternative to the blanket license.  *See* Compl. ¶¶ 97, 98.  As relief, plaintiff seeks an injunction against SESAC:  i) establishing the equivalent of a rate court, ii) prohibiting de facto exclusive contracts, and iii)

offering alternatives to the blanket license.  Additionally, plaintiff asks for expenses and costs of suit, including reasonable attorneys' fees.  *Id.* at 29-30 (Relief Sought).

Just like the offer in *Weitzner*, SESAC's Rule 68 Offer of Judgment provides for complete relief to plaintiff:

> 1. *SESAC Eliminated All Restrictions on Direct Licensing by Affiliates, So Its Agreements Can No Longer Be Said to Be de Facto Exclusive Contracts*

Plaintiff asks this Court to enjoin SESAC from entering into de facto exclusive contracts with its affiliates.  This claim for relief is now moot because SESAC has already eliminated all direct licensing provisions in all of its supplemental agreements with affiliates.  Collins Dec. ¶¶ 4-5  & Exhibit B.  Every single SESAC affiliate, no matter where its music is played, is completely free to enter into a direct license at any price and with any entity.  Affiliates may directly license their copyrights without any prohibitions, penalties, requirements, or restrictions.

These changes in SESAC's business practices will independently be enforceable by plaintiff's constituent owners of approximately 367 radio stations, because SESAC is obligated to maintain them under the TV Settlement Agreement.  That Agreement, among other things, prohibits SESAC from interfering in any way with the ability of an affiliate to enter into a direct license.  Collins Dec. Exhibit C, ¶ 3(n).  And, that Agreement is ultimately enforceable in court.  As noted, 232 of the television stations covered by the TV Settlement Agreement are under common ownership with commercial radio stations.  Collins Dec. ¶ 8 & Exhibit D.

Moreover, SESAC's Offer of Judgment provided for entry of an injunction that would prohibit direct licensing provisions in affiliate contracts and prohibit SESAC from interfering with the ability of an affiliate to direct license.  The offered injunction barred SESAC from:  i) imposing penalties on an affiliate for direct licensing, ii) requiring that money from direct

licenses be paid to SESAC, iii) making an affiliate refer direct license requests to SESAC, or iv) requiring SESAC-approved prices for direct licenses.

      2.     *SESAC Offers a Robust, Unrestricted Repertory Search Function on Its Online Database and  SESAC Maintains a Current, Searchable, and Downloadable SESAC Repertory Song List on Its Website*

Plaintiff has claimed that SESAC refuses to make its repertory available.  This claim for relief is now moot because SESAC has already made its repertory available.  Additionally, it removed prior restrictions on the number of searches permitted on SESAC's preexisting repertory database.  The online repertory database is searchable by song, writer, publisher or artist, and includes a writer's alternative names in the search.  Sewell Dec. ¶ 3 & Exhibit 1.

SESAC has also introduced the Song List, which identifies all songs SESAC can license. It includes song titles, SESAC-affiliated songwriters and SESAC-affiliated publishers for each musical composition, including copyrighted arrangements of works in the public domain. SESAC uses reasonable efforts to keep the information contained on the Song List current.  The date and time of the most recent update to the list is available on the website.  The Song List is downloadable in .pdf format as an "enhanced song list" or as a "simple song list."  The enhanced song list includes graphics and audio files to assist the user.  Additionally, it allows a user to filter all song titles by letter of the alphabet, by song title, by publisher name or writer name.  *Id.* ¶ 4 & Exhibit 2; Collins Dec. ¶ 11.

SESAC's Offer of Judgment provided for entry of an injunction obligating SESAC to grant users an unlimited number of searches on its repertory search database and requiring that SESAC maintain the Song List on its website, with the features described above.  Collins Dec. Exhibit A, ¶ 7.a.iv.

16

3.      *SESAC Has Committed to a Thirty-Day Grace Period for Unintentional Copyright Infringement by Commercial Radio Stations*

Although it is not part of plaintiff's monopolization claim, SESAC is sensitive to concerns of unintentional copyright infringement.  Therefore, since December 11, 2014, SESAC has granted users a grace period of thirty days from the date that a musical work is first posted to the Song List to obtain a public performance license.  Within that thirty-day grace period, SESAC will not claim copyright infringement if a user, acting in good faith, was unaware that SESAC represented the copyright holder.  Collins Dec. ¶ 13 & Exhibit E.

SESAC's Offer of Judgment included entry of an injunction granting commercial radio stations this thirty-day grace period.  *Id.* Exhibit A, ¶ 7.a.iv.

4.      *SESAC Offered to Guarantee Stations a Per-Program License as an Alternative to the Blanket License*

Plaintiff has asked the Court to require SESAC to offer alternatives to the blanket license.  This claim for relief is now moot.  For many decades, SESAC has offered its All-Talk Amendment — a 75% discount off the blanket license fee without any additional administrative or overhead costs — as an alternative to the blanket license.  Currently, more than 1,850 commercial radio stations take advantage of the All-Talk Amendment.  Collins Dec. ¶ 9.

Plaintiff's claim for an alternative to the blanket license is also mooted by SESAC's Offer of Judgment, which provided for entry of an injunction through 2025 guaranteeing to all commercial radio stations a choice of a per-program license as an alternative to SESAC's blanket license.  The terms of the per-program license were either to be negotiated by plaintiff and SESAC or, failing that, determined in binding arbitration.  Pending the first arbitration, SESAC offered the plaintiff the option of choosing either SESAC's All-Talk Amendment or the per-program license terms currently offered by BMI.  Collins Dec. Exhibit A, ¶ 7.a.ii.

17

5.      *SESAC Offered Binding Arbitration to Determine License Fees and Terms*

Plaintiff has asked the Court to require SESAC to submit to the equivalent of a rate court. The necessity for a rate court is obviated because SESAC's Offer of Judgment includes entry of an injunction that would require license fees to be negotiated by plaintiff and SESAC or be determined by binding arbitration.  Moreover, under the terms set forth in SESAC's Offer of Judgment, license fees from an expiring license period would continue on an interim basis and any commercial station that continued to make license fee payments would be treated as fully licensed and would not face any threats of copyright infringement.

Arbitration is more than sufficient to address plaintiff's requested relief for numerous reasons.  First, an arbitration panel provides plaintiff with an adjudicative body with binding authority to resolve license fee disputes, while preserving judicial resources.

Second,  the Department of Justice and the Federal Trade Commission have endorsed arbitration for license rate disputes in analogous situations.  *See United States v. Comcast Corp.*, 808 F. Supp. 2d 145 (D.D.C. 2011) (cable programming); *In re Motorola Mobility LLC, & Google Inc.*, C-4410, 2013 WL 3944149 (F.T.C. July 23, 2013) (FRAND licensing).

Third, the Department of Justice is currently considering whether the rate courts for ASCAP and BMI should be eliminated and/or replaced with an arbitration system.  *See* U.S. Department of Justice, "Antitrust Consent Decree Review" (2014) available at http://www.justice.gov/atr/cases/ascap-bmi-decree-review.html.

Fourth, the broadcast television industry (which owns close to 400 U.S. radio stations) has agreed to arbitrate license fees and terms with SESAC, thereby endorsing this fair and neutral adjudicative process.

Rate courts, in contrast to arbitration, are disfavored.  The Supreme Court strongly disapproves of courts acting as regulators:  "The Sherman Act is indeed the 'Magna Carta of free

18

enterprise,'…but it does not give judges *carte blanche* to insist that a monopolist alter its way of doing business whenever some other approach might yield greater competition." *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415-16 (2004) (citations omitted); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 452 (2009) ("Courts are ill-suited 'to act as central planners, identifying the proper price, quantity, and other terms of dealing.'") (quoting *Trinko,* 540 U.S. at 408).  Justice Breyer, writing for the  First Circuit, also disapproves of rate courts:

> [H]ow is a judge … to determine a 'fair price?'  Is it the price charged by other suppliers of the primary product?  None exist.  Is it the price that competition 'would have set'…?  How can the court determine this price without examining costs and demands, indeed without acting like a rate-setting regulatory agency, the rate-setting proceedings of which often last for several years? … And how should the court respond when costs or demands change over time, as they inevitably will? ... [W]e have said enough to show why antitrust courts normally avoid direct price administration, relying on rules and remedies … that are easier to administer.

*Concord v. Boston Edison Co.*, 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, J.)

> 6.    *SESAC Offered to Pay Plaintiff's Reasonable Costs and Attorneys' Fees*

Plaintiff has asked the Court to order SESAC to pay plaintiff's expenses and costs of suit and reasonable attorneys' fees.  This claim for relief is now moot because SESAC's Offer of Judgment included a requirement that SESAC pay plaintiff's reasonable costs, including reasonable attorneys' fees.  Collins Dec. Exhibit A, ¶ 7.b.

* * *

In short, as a result of these cumulative changes in SESAC's business practices and the other commitments set forth in its Offer of Judgment, SESAC has offered plaintiff complete relief and the complained of conduct cannot reasonably be expected to recur.

C.   **SESAC's Offer of Complete Relief Moots Plaintiff's Claim Regardless of Whether the Rule 68 Offer Was Accepted**

"[W]hether or not the plaintiff accepts the offer, no justiciable controversy remains when a defendant tenders an offer of judgment under Rule 68 encompassing all the relief a plaintiff could potentially recover at trial." *Symczyk*, 656 F.3d at 195. *Symczyk* controls and disposes of this motion.

In *Alliance to End Repression*, defendants consented to entry of an injunction by consent decree. They also offered damages, which all but five plaintiffs accepted.   820 F.2d at 874. The five plaintiffs were content with the injunction and the monetary damages, but they "also wanted a judicial declaration that their rights had been violated." *Id.* The parties could not agree on a confession of misconduct, so they agreed to submit the case to the court on stipulated facts and not appeal the decision. *Id.* They also accepted the damages as complete relief. *Id.* The trial court dismissed two plaintiffs' claims while the other three plaintiffs were awarded judgment on the merits. *Id.* The case then went to the Seventh Circuit on an appeal of the award of attorneys' fees. *Id.* The Seventh Circuit (Judge Easterbrook) held that a plaintiff who is offered all the relief he demands may not refuse the offer and go to trial. *Id.* at 878.

The mootness of the case before this Court is determined by *Symczyk* and the reasoning of *Alliance to End Repression*. SESAC offered an injunction for almost eleven years affording plaintiff complete relief. Therefore, this Court lacks subject matter jurisdiction to go any further.

## **CONCLUSION**

SESAC offered complete relief to plaintiff for its Count III monopolization claims in the form of a judicially-enforceable injunction through December 31, 2025. This complete relief, which is broader than what could reasonably be obtained at trial, moots plaintiff's claim, notwithstanding plaintiff's failure to accept the offer. Because it is unreasonable to believe that

20

SESAC's actions would recur and harm plaintiff in the future, plaintiff's alleged injury and future injury no longer exist, and there is no longer any Article III live case or controversy between the parties.  Plaintiff's Complaint is moot.  This Court lacks subject matter jurisdiction.

For the foregoing reasons, the Complaint is moot, and this Court should dismiss this action for lack of subject matter jurisdiction.

Respectfully submitted,

By: /s/ Mark J. Botti
Mark J. Botti

**SQUIRE PATTON BOGGS (US) LLP**
Mark J. Botti (pro hac vice)
John A. Burlingame (pro hac vice)
Iain R. McPhie (pro hac vice)
Jody A. Boudreault (pro hac vice)
Thomas J. Craven (pro hac vice)
2550 M Street, NW
Washington, D.C. 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Email: mark.botti@squirepb.com
Email: john.burlingame@squirepb.com
Email: iain.mcphie@squirepb.com
Email: jody.boudreault@squirepb.com
Email: thomas.craven@squirepb.com

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph (pro hac vice)
Peter R. Jerdee (pro hac vice)
Rachel M. Cherington (pro hac vice)
Honey L. Kober (pro hac vice)
Samuel N. Fraidin (pro hac vice)
485 Lexington Avenue, 30th Floor
New York, NY 10017
Tel: (212) 407-1200
Fax: (212) 407-1280
Email: gjoseph@jha.com
Email: pjerdee@jha.com
Email: rcherington@jha.com
Email: hkober@jha.com

21

Email: sfraidin@jha.com

**LAW OFFICES OF GARY A. ROSEN P.C.**
Gary A. Rosen (PA I.D. No. 40967)
26 Summit Grove Avenue
Suite 217
Bryn Mawr, PA  19010
Tel.: (610) 658-8790
Fax: (610) 658-8792
Email: grosen@logarpc.com

*Counsel for Defendants*
SESAC, Inc., SESAC, LLC, and SESAC
Holdings, Inc.

22