## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RADIO MUSIC LICENSE COMMITTEE, INC.<br><br>                              Plaintiff,<br><br>        v.<br><br>SESAC, INC., SESAC, LLC, AND SESAC HOLDINGS, INC.,<br><br>                          Defendants. | Civil Action<br><br>No. 2:12-cv-05807-CDJ-LAS<br><br>Judge C. Darnell Jones, II<br>Magistrate Judge Lynne A. Sitarski<br><br>**Electronically Filed** |

## RADIO MUSIC LICENSE COMMITTEE, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     SESAC'S RULE 68 OFFER DID NOT MOOT THIS CASE BECAUSE IT DID
       NOT OFFER EVERYTHING RMLC COULD POTENTIALLY WIN AT TRIAL..........4

       A.     SESAC's Offer Does Not Moot This Case Because It Disclaimed
              SESAC's Liability ..................................................................................................5

       B.     SESAC's Offer Does Not Moot This Case Because It Did Not Offer A
              Judicial Rate-Making Procedure Comparable To Those Governing
              ASCAP And BMI ....................................................................................................7

              1.     Offering Private Arbitration Is Not The Same Thing As Agreeing
                     To Submit To A Judicial Rate Court ...........................................................7

              2.     The Arbitration Procedure That SESAC Offered Is Vastly Inferior
                     To The ASCAP And BMI Rate-Setting Procedures.................................10

       C.     SESAC's Offer Did Not Moot This Case Because It Did Not Enjoin
              SESAC From Engaging In *De Facto* Exclusive Dealing With Its Affiliates ........13

       D.     RMLC's Case Is Not Moot Because SESAC Did Not Offer All
              Economically Viable Alternatives To Its Blanket License That RMLC
              Could Win At Trial ................................................................................................14

       E.     The Purported Changes That SESAC Made To Its Website Are Irrelevant
              To This Motion .....................................................................................................15

II.    THIS CASE IS NOT MOOT BECAUSE RMLC HAS A PERSONAL STAKE IN
       THE OUTCOME UNTIL AT LEAST AFTER TRIAL.....................................................17

CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alliance to End Repression v. City of Chicago*,
     820 F.2d 873 (7th Cir. 1987) .....................................................................................4

*Arkla Energy Res. v. Roye Realty & Dev., Inc.*,
     9 F.3d 855 (10th Cir. 1993) .....................................................................................12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
     472 U.S. 585 (1985).................................................................................................14

*Basha v. Mitsubishi Motor Credit of Am., Inc.*,
     336 F.3d 451 (5th Cir. 2003) ...................................................................................12

*Bath v. Red Vision Sys., Inc.*,
     No. 2:13-02366, 2014 U.S. Dist. LEXIS 73563 (D.N.J. May 29, 2014)...................4

*Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund*,
     579 Fed. App'x 72 (3d Cir. 2014)..............................................................................4

*Catanzano v. Doar*,
     378 F. Supp. 2d 309 (W.D.N.Y. 2005) ....................................................................12

*DeJohn v. Temple Univ.*,
     537 F.3d 301 (3d Cir. 2008).....................................................................................16

*Diaz v. First Am. Home Buyers Prot. Corp.*,
     732 F.3d 948 (9th Cir. 2013) .....................................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
     528 U.S. 167 (2000).................................................................................................15

*Genesis Healthcare Corp. v. Symczyk*,
     133 S. Ct. 1523 (2013)...................................................................................3, 17, 18

*Hrivnak v. NCO Portfolio Mgmt., Inc.*,
     719 F.3d 564 (6th Cir. 2013) .......................................................................4, 7, 8, 18

*Hunt v. Wash. State Apple Adver. Comm'n*,
     432 U.S. 333 (1977)...................................................................................................6

*Lish v. Harper's Magazine Found.*,
     148 F.R.D. 516 (S.D.N.Y. 1993) ...............................................................................5

*Lorain Journal Co. v. United States*,
    342 U.S. 143 (1951) ................................................................................................ 14

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) .................................................................................................. 7

*Payne v. Progressive Fin. Servs.*,
    748 F.3d 605 (5th Cir. 2014) ................................................................................... 4

*Peterson v. Shearson/American Express, Inc.*,
    849 F.2d 464 (10th Cir. 1998) ................................................................................. 8

*Rand v. Monsanto Co.*,
    926 F.2d 596 (7th Cir. 1991) ................................................................................... 4

*Scott v. Westlake Servs. LLC*,
    740 F.3d 1124 (7th Cir. 2014) ................................................................................. 3

*Seymour v. PPG Indus., Inc.*,
    891 F. Supp. 2d 721 (W.D. Pa. 2012) ............................................................... 4, 18

*Spiegel v. Cortese*,
    196 F.3d 717 (7th Cir. 1999) ................................................................................... 5

*Symczyk v. Genesis Healthcare Corp.*,
    656 F.3d 189 (3d Cir. 2011) .......................................................................... *passim*

*United States v. Glaxo Grp. Ltd.*,
    410 U.S. 52 (1973) ................................................................................................ 18

*United States v. Microsoft Corp.*,
    231 F. Supp. 2d 144 (D.D.C. 2002) ........................................................................ 9

*United States v. Ore. State Med. Soc.*,
    343 U.S. 326 (1952) .............................................................................................. 16

*United States v. U.S. Gypsum Co.*,
    340 U.S. 76 (1950) ................................................................................................ 18

*Valencia v. Affiliated Grp., Inc.*,
    No. 07-61381-CIV, 2008 WL 4372895 (S.D. Fla. Sept. 24, 2008) ......................... 5

*Weiss v. Regal Collections*,
    385 F.3d 337 (3d Cir. 2004) ................................................................................... 4

*Weitzner v. Sanofi Pasteur, Inc.*,
    7 F. Supp. 3d 460 (M.D. Pa. 2014) ........................................................................ 4

*Zenith Radio Corp. v. Hazeltine Research*,
   395 U.S. 100 (1969)...............................................................................................18

*ZF Meritor, LLC v Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012)............................................................................13, 17

*Zinni v. ER Solutions, Inc.*,
   692 F.3d 1162 (11th Cir. 2012) ..............................................................................5

## STATUTES

15 U.S.C. § 26...........................................................................................................5

## OTHER AUTHORITIES

American Arbitration Association, Commercial Arbitration Rules and Mediation
   Procedures...............................................................................................................8

Complaint, *Meredith Corp. v. SESAC, LLC*,
   No. 09 Civ. 9177 (S.D.N.Y. Nov. 4, 2009) ..........................................................16

## INTRODUCTION

The Rule 68 offer of judgment that SESAC made to RMLC does not moot this case because it does not come close to encompassing **all** of the relief that RMLC could **potentially** recover at trial.  Although SESAC ignores it, that is the legal standard that governs this motion and SESAC has not remotely met it.

RMLC is a non-profit trade association that operates on a limited budget and with limited resources.  It filed this lawsuit on behalf of its radio station members to stop the years of monopolistic abuse that they have been suffering at SESAC's hands.  RMLC does not seek any damages in this case; it seeks only declaratory relief and a forward-looking injunction.  If SESAC's offer of judgment had really given RMLC everything that it could potentially recover at trial on behalf of its members, RMLC, which only has the best interests of its member stations at heart, would have had no conceivable reason to turn it down.  Of course, the offer did no such thing.

*First,* RMLC's very first demand for relief in the complaint is to have SESAC declared and adjudicated to be an unlawful monopolist that has violated the antitrust laws.  But SESAC's offer of judgment expressly disclaims its liability.  An adjudication of SESAC's liability has tremendous value not just to RMLC's reputation with its members and to RMLC in its future dealings with Performing Rights Organizations ("PROs"), but also to the members themselves.  The stations could use that liability finding as collateral estoppel in their own follow-on lawsuits for damages, saving themselves significant time and money in recovering what SESAC owes them.

*Second*, RMLC also seeks to have SESAC submit to a *judicial* rate-making procedure comparable to the procedures that the consent decrees regulating ASCAP's and BMI's behavior impose.  These judicial procedures currently set rates for at least a five-year period, provide a

mechanism to fund non-profit RMLC's participation on behalf of the radio industry in the rate-setting process, and offer a number of other protections to RMLC's members.  SESAC did not offer to submit to any judicial process whatsoever; it only offered to engage in private arbitration.  Even then, it offered to set rates for only two years, offered no mechanism to fund RMLC's participation in the arbitration process, and did not offer many of the other benefits that RMLC's members get with the ASCAP and BMI procedures.  Forcing RMLC to engage in costly and time consuming arbitration every two years with no source of funding could bankrupt the association and it is certainly not equivalent to the process that governs the RMLC's negotiations with the judicially regulated PROs.

*Third*, RMLC seeks to preclude SESAC from entering into *de facto* exclusive contracts with its affiliates.  SESAC says that it has eliminated this concern because it has purportedly voided all of the express provisions in its contracts with its affiliates that prohibit direct licensing.  SESAC apparently misunderstands what *de facto* exclusive dealing is.  The fact that SESAC supposedly eliminated express exclusivity from its contracts says nothing about whether it has eliminated *de facto* exclusive dealing.

*Finally*, RMLC seeks to have SESAC make available economically viable alternatives to its blanket license, such as per-program licenses and adjustable-fee blanket licenses.  SESAC's offer of judgment offers to make *one* of these available, the per-program license, but only if SESAC stops offering the All-Talk license that is currently available to radio stations.  It is certainly at least "possible" that, after proving SESAC's liability at trial, RMLC could obtain an injunction forcing SESAC to offer alternatives to its blanket license *in addition to* (*i.e.*, without withdrawing) the All-Talk Amendment.

Any one of these is, by itself, a sufficient reason for the Court to deny SESAC's motion. The combination of them makes plain why the offer did not moot RMLC's claims. The relief that SESAC offered is not equivalent to the relief that the RMLC can achieve on behalf of its members if it wins this case.

## ARGUMENT

SESAC's motion starts from a dubious legal premise. Although the Third Circuit has held that a Rule 68 offer of judgment that offers "complete relief will generally moot the plaintiff's claim," *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011) (quotation and citation omitted), *rev'd on other grounds*, 133 S. Ct. 1523 (2013), other circuits disagree.[1] *See, e.g.*, *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 952-55 (9th Cir. 2013) ("[A]n unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot."). The Supreme Court has not yet had the opportunity to resolve this split, but four justices have already gone on record saying that the Third Circuit's view "is wrong, wrong, and wrong again." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1533 (2013) (Kagan, J., dissenting, with Ginsburg, Breyer, and Sotomayor, JJ., joining).

It is RMLC's position that, even if an offer of judgment offers complete relief, the plaintiff's failure to accept it cannot moot the case as a matter of law. But this Court need not reach this particular issue because, even applying Third Circuit law as it currently exists, SESAC did not offer RMLC complete relief.

---

[1] Even the Seventh Circuit—on whose law SESAC heavily relies (Mem. at 12)—is rethinking its position in light of the *Symczyk* dissent. *Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 n.1 (7th Cir. 2014) ("The circuit split remains, but there are reasons to question our approach to the problem. Scott does not challenge our circuit's view, so we will continue to await a resolution of the split." (citing *Symczyk*, 133 S. Ct. at 1533-34 (Kagan, J., dissenting))).

I.     **SESAC'S RULE 68 OFFER DID NOT MOOT THIS CASE BECAUSE IT DID NOT OFFER EVERYTHING RMLC COULD POTENTIALLY WIN AT TRIAL**

Although its legal consequences may be unsettled, the legal *meaning* of "complete relief" is well established. "Complete relief" requires that the defendant's offer "encompass[] *all* the relief a plaintiff *could potentially* recover at trial." *Symczyk*, 656 F.3d at 195 (emphasis added); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013) (complete relief means "everything [the plaintiff] could possibly win[,]" such that, to "moot a case . . . , an offer of judgment must give the plaintiff *everything* he has asked for as an individual") (emphasis in original); *Payne v. Progressive Fin. Servs.*, 748 F.3d 605, 607 (5th Cir. 2014) ("An incomplete offer of judgment—that is, one that does not offer to meet the plaintiff's full demand for relief—does not render the plaintiff's claims moot."). If RMLC could "potentially recover greater relief at trial than the amount set forth in the offer from" SESAC, RMLC's claim is not moot. *Seymour v. PPG Indus., Inc.*, 891 F. Supp. 2d 721, 737 (W.D. Pa. 2012); *Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund*, 579 Fed. App'x 72, 75 (3d Cir. 2014) ("[A] unilateral offer of relief that fails to cover the entire claim does not render moot a plaintiff's claim.").

None of SESAC's cases holds to the contrary. They are all inapposite because all of them, including *Symczyk*, dealt with a situation where it was undisputed that the defendant had offered the plaintiff everything that it could possibly recover individually at trial.[2] That is not so here. *Bath v. Red Vision Sys., Inc.*, No. 2:13-02366, 2014 U.S. Dist. LEXIS 73563, at *8-10 (D.N.J. May 29, 2014) ("Plaintiff vehemently disputes that [defendant's] offer provides her with complete relief, as opposed to the employee in *Symczyk* who conceded that point. . . .

---

[2]     *See* SESAC's Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Mem.") at 11-15 (ECF No. 118-1) (citing *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004); *Weitzner v. Sanofi Pasteur, Inc.*, 7 F. Supp. 3d 460, 465 (M.D. Pa. 2014); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 874-76 (7th Cir. 1987); *Rand v. Monsanto Co.*, 926 F.2d 596, 597-98 (7th Cir. 1991)).

Accordingly, . . . the Court is unable to determine the amount of damages that would fully compensate Plaintiff[.]").

A.      **SESAC's Offer Does Not Moot This Case Because It Disclaimed SESAC's Liability**

The very first item for relief in RMLC's complaint is that "SESAC's unlawful conduct be declared, adjudicated, and decreed a violation of Section[] . . . 2 of the Sherman Act." Complaint at 29 (ECF No. 1).  But SESAC's offer of judgment states that "SESAC does not admit any liability whatsoever in connection with this action or that Plaintiff would be entitled to any relief from SESAC."  SESAC's Offer of Judgment ("SESAC Rule 68 Offer") ¶ 8 (ECF No. 119-1).  It is of course beyond question that, if RMLC succeeded at trial, the Court would find and adjudicate SESAC to be a monopolist that has violated Section 2; in fact, that is the only way that the Court could award RMLC any injunctive relief.  15 U.S.C. § 26 (party entitled to injunctive relief where it shows "threatened loss or damage *by a violation of the antitrust laws*") (emphasis added).  Such adjudication and decree are therefore an element of relief that RMLC "could potentially recover at trial" that SESAC did not offer.  *Symczyk*, 656 F.3d at 195.

An offer of judgment that disclaims liability is less valuable than an offer that admits liability.  *See Lish v. Harper's Magazine Found.*, 148 F.R.D. 516, 517-20 (S.D.N.Y. 1993) (fact that defendant disclaimed liability in Rule 68 offer precluded it from obtaining costs after trial because such an offer was less valuable than what the plaintiff actually achieved); *Spiegel v. Cortese*, 196 F.3d 717, 722 (7th Cir. 1999) (same).  Thus, a Rule 68 offer that disclaims a requested declaration of liability by definition offers incomplete relief.  *See Valencia v. Affiliated Grp., Inc.*, No. 07-61381-CIV, 2008 WL 4372895, at *2 (S.D. Fla. Sept. 24, 2008) (Rule 68 offer did not moot case because it "did not offer to satisfy Plaintiff's demand for declaratory . . . relief"); *cf. Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167-68 (11th Cir. 2012) ("Each of the

Appellants requested that the district court enter judgment . . . .  Appellees' settlement offers, however, did not offer to have judgment entered against them. Because the settlement offers were not for the full relief requested, a live controversy remained over the issue of a judgment, and the cases were not moot.").

Having SESAC adjudicated and decreed a monopolist is an important component of the package of relief that RMLC seeks in this case.  First, successfully having SESAC's conduct declared in violation of the antitrust laws would directly benefit RMLC itself, as it would promote RMLC's reputation in the industry and foster goodwill with its members and potential members.  Declaration of William Velez ¶¶ 4, 15 (Feb. 23, 2015 ) ("Velez Decl.").  Because RMLC is a representative organization, it is important that RMLC is viewed as having dealt effectively with SESAC's price gouging of the radio industry.  *Id.*  This reputational benefit would extend to RMLC's position as a bargaining agent of the radio industry with ASCAP and BMI as well.  *Id.*

Second, a declaration that SESAC committed unlawful monopolization would mean that it charged supracompetitive prices.  Thus, in subsequent rate-setting proceedings, SESAC's prior rates could not be a benchmark for reasonable prices because they reflect monopoly overcharges. SESAC's Rule 68 offer deprived RMLC of that benefit, and thus failed to provide complete relief.  Velez Decl. ¶¶ 16-17.

Finally, having SESAC's liability established is important to RMLC's members.  RMLC filed this case to obtain declaratory and injunctive relief on behalf of its member stations under the doctrine of associational standing.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Although its members are not parties to this suit, the relief that RMLC seeks is for their benefit.  *Id.*; *see also* Velez Decl. ¶ 14.  However, the injunctive relief would be only

forward looking; it would not financially compensate stations for the monopolistic fees that SESAC has already extorted from them.

In the circumstances of this case, there can be no dispute that having SESAC declared and adjudicated to be an unlawful monopolist would provide RMLC's members a tremendous benefit. Such relief would permit those stations that wanted to sue SESAC for past damages under the antitrust laws to take advantage of the collateral estoppel consequences that would flow from a judgment in RMLC's favor. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 335-36 (1979), and its progeny would permit RMLC's members to use non-mutual issue preclusion offensively against SESAC in follow-upon damages actions to prove, among other issues, that SESAC (1) has monopoly power and (2) has engaged in anticompetitive conduct. That would mean that individual members would only need to prove the amount by which SESAC harmed them—a much less expensive, less complicated, and less time-consuming endeavor.

**B.      SESAC's Offer Does Not Moot This Case Because It Did Not Offer A Judicial Rate-Making Procedure Comparable To Those Governing ASCAP And BMI**

RMLC seeks an injunction "requiring SESAC to submit to a judicial rate-making procedure comparable to what the consent decrees regulating ASCAP's and BMI's behavior impose[.]"  Compl. at 29-30.  SESAC did not offer to submit to any judicial rate-making procedures at all, and the arbitration process that it did offer is not remotely comparable to the ASCAP and BMI procedures.

**1.      Offering Private Arbitration Is Not The Same Thing As Agreeing To Submit To A Judicial Rate Court**

SESAC's belief that a private arbitration is the "functional equivalen[t]" of a rate court is irrelevant.  Mem. at 3 n.3.  "An offer limited to the relief the defendant believes is appropriate does not suffice.  The question is whether the defendant is willing to meet the plaintiff on his

terms." *Hrivnak*, 719 F.3d at 567.  Because RMLC requests as relief the establishment of a judicial rate court and SESAC did not offer that, SESAC did not meet RMLC on its terms and this case is not moot.  *Id.*

In any event, SESAC's offer to submit to private arbitration is not the same thing as the judicial rate court that RMLC seeks.  Mem. at 18.  Unlike arbitration, litigation before a federal judge involves full discovery that facilitates more informed rate determinations; precedent controls the proceedings; the court publishes its findings, which are subject to appellate review; and having an assigned judge builds expertise.  Velez Decl. ¶ 21.  Arbitration is a much more circumscribed procedure.  *See, e.g.*, *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 468 (10th Cir. 1998) (finding right to arbitrate waived because defendant had engaged in conduct in federal litigation that was not available in arbitration, such as deposing witnesses); American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures.[3]  While SESAC may believe that certain features of arbitration are better for it, that is not the test here. *Hrivnak*, 719 F.3d at 567.

It is unremarkable, and also completely irrelevant, that the FTC and Justice Department have sometimes endorsed arbitration.  Mem. at 3 n.3, 18.  The legal question on this motion is not whether arbitration could be an alternative way to set rates; rather, this motion asks only whether RMLC "could potentially" be awarded relief in the form of a rate court.  *Symczyk*, 656 F.3d at 195.  The answer to that question is indisputably yes.  The Justice Department has seen

---

[3]     *Available at* https://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_004130&_afrLoop=1630746097605004&_afrWindowMode=0&_afrWindowId=1cd0dk3pgq_11 1#%40%3F_afrWindowId%3D1cd0dk3pgq_111%26_afrLoop%3D1630746097605004%26doc %3DADRSTG_004130%26_afrWindowMode%3D0%26_adf.ctrl-state%3D1cd0dk3pgq_171.

fit for over 70 years to regulate ASCAP and BMI using a rate-court procedure.[4]  Velez Decl. ¶ 6.

And courts have imposed pricing controls on firms found to have unlawfully monopolized

markets in other circumstances too.  *See, e.g.*, *United States v. Microsoft Corp.*, 231 F. Supp. 2d

144, 170-71 (D.D.C. 2002).  Even if it were true, as SESAC claims, that rate courts are

"disfavored"[5] (Mem. at 18), that falls far short of there being no possibility of RMLC's being

awarded such relief, particularly when the full extent of SESAC's monopolistic scheme is not yet

before the Court.  *See* Part II *infra*.

It is likewise irrelevant that, in an effort to *settle* litigation, the television broadcast

industry was willing to accept an offer of binding arbitration in lieu of a rate court.  Mem. at 18.

This motion is not about what compromises a party might reasonably accept in settlement.  It is

about whether SESAC has mooted this case by offering RMLC everything that RMLC could

conceivably hope to obtain in relief at trial.  SESAC has not done so.

SESAC, of course, neglects to mention that the television industry accepted the

settlement compromise of arbitration because SESAC agreed to pay the television industry close

to $60 million in cash, offered to arbitrate every four years (not every two years), and agreed that

the historical fees that it has charged over the last seven years are "non-precedential" and cannot

be used in the arbitration as evidence of what a reasonable license fee should be.  Declaration of

Patrick Collins ("Collins Decl.") Ex. C, *Meredith* Settlement Agreement at 4, 7, 9 (ECF No. 119-

---

[4]    No one knows what the outcome of DOJ's review of the ASCAP and BMI consent
decrees will be.  But the possibility that DOJ might determine that, after 70 years of precedent, a
rate court is no longer necessary for ASCAP and BMI says nothing about whether a rate court
would be appropriate to deal with SESAC.  It is beyond dispute that DOJ has long believed a rate
court is necessary to discipline monopolistic PROs.

[5]    SESAC's citation to *Trinko* and *LinkLine* confuses the question of liability and remedy.
Mem. at 19.  Those cases discuss whether courts should determine reasonable rates in order to
decide whether the defendant has violated the antitrust laws at all.  Neither case held that an
adjudged violator cannot be forced to charge competitive rates, much less that rate-court
proceedings are unavailable as a remedy.

3).  SESAC offered none of this to RMLC in its offer of judgment.  *See* SESAC Rule 68 Offer,

Collins Decl. Ex. A.

>    **2.      The Arbitration Procedure That SESAC Offered Is Vastly Inferior To**
>             **The ASCAP And BMI Rate-Setting Procedures**

Even if private arbitration in general were considered the "functional equivalen[t]" of a

rate court, Mem. at 3 n.3, that would not help SESAC here because the arbitration procedures

that SESAC offered do not remotely compare to the procedures in the ASCAP and BMI rate

courts.

The rate-court procedures for ASCAP and BMI have two critical features for RMLC.

First, both the ASCAP and BMI rate courts have imposed a mechanism to fund RMLC's

participation in the rate-setting process on behalf of the radio industry.  Velez Decl., Exs. 1 & 2,

¶ 5.  Observing that over 9,500 radio stations "are either represented by the RMLC directly or

have otherwise agreed to be bound by the licenses negotiated by the RMLC[,]" the court in both

the ASCAP and BMI proceedings required the payment of fees between $12 and $510 per

station, per license to RMLC.  *Id.*  The provision is essential because "RMLC has incurred and

will incur costs in connection with the administration of the Licenses and the RMLC's ongoing

representation of radio stations operating under and benefiting from the Licenses[.]"  *Id.*

Without that funding, non-profit RMLC could not participate in the rate-setting process or fulfill

its responsibilities in representing the commercial radio industry.  *Id.* ¶ 22.

Second, the rate courts typically set a PRO's rates for a period of at least five years.  For

example, the last rate-court orders for ASCAP and BMI set license fees and terms for the period

January 1, 2010 through December 31, 2016.  *Id.* Exs. A & B, ¶ 1.  Having rates set for a period

of at least a few years is also critical to RMLC's fulfilling its representative role in the rate-

setting process.  The rate-setting process is expensive and time consuming, regardless whether it

is a rate court or a private arbitration.  *Id.* ¶ 23.  Holding multiple rate-setting procedures in quick succession, with each one only establishing short-term rates, would increase RMLC's litigation costs by orders of magnitude, overtax its limited resources, and deny radio stations certainty as to their near-term license fee obligations.  *Id.*

The arbitration process that SESAC offered omits these two critical features.  SESAC offered no funding mechanism for RMLC at all; indeed, SESAC did not even offer to pay the arbitrators' fees.  SESAC Rule 68 Offer, Collins Dec. Ex. A.  And the offer would have required RMLC to arbitrate every two years, instead of every five years (or even every four years like SESAC has agreed to do with the television industry).  Collins Decl. Ex. C, *Meredith* Settlement Agreement at 11-12.  Far from providing complete relief, accepting that offer could have bankrupted RMLC.  Velez. Decl. ¶ 25.  Each round of private arbitration could cost RMLC several million dollars, which it would have to pay repeatedly on a 24-month cycle.  *Id.*  It would also impose a crushing burden on RMLC's limited personnel resources, hampering RMLC's ability to effectively represent the industry in also dealing with ASCAP and BMI.  *Id.*  SESAC may believe that *it* is better off with a two-year cycle and better off not funding its adversary in the rate-setting process.  But the question here is whether, after proving at trial that SESAC is an unlawful monopolist charging supracompetitive prices, RMLC could possibly obtain relief in the form of a five-year cycle (instead of two) with some funding of its participation in the rate-setting process.  The ASCAP and BMI procedures prove that it could, so RMLC's claim is not moot.

The arbitration procedures that SESAC offered were inadequate for other reasons, too. While a judicial rate-making procedure comparable to that binding ASCAP and BMI would endure indefinitely, SESAC merely offered an agreement of ten years' duration.  SESAC Rule

68 Offer at 7, Collins Decl. Ex. A.  Further, the decrees underlying the ASCAP and BMI rate-court procedure impose duties on those performing rights organizations that are absent in SESAC's Rule 68 offer.  For example, the rate-court proceedings determine reasonable rates for not just analog broadcasting, but also HD broadcasting and website streaming.  Velez Decl. ¶ 24.  SESAC's offer of judgment does not clearly state that it offered to arbitrate all three rates, as opposed to just analog rates, SESAC Rule 68 Offer, Collins Decl. Ex. A, and SESAC refused RMLC's request to clarify it.  Velez Decl. ¶¶ 24, 32.  The law did not require RMLC to take the risk of this ambiguity on threat of having its case mooted.  *See, e.g.*, *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 455 (5th Cir. 2003) (refusing to enter judgment on Rule 68 offer where "a vague offer of judgment did not provide [plaintiff] with a clear baseline to evaluate the risks of continued litigation."); *Arkla Energy Res. v. Roye Realty & Dev., Inc.*, 9 F.3d 855, 867 (10th Cir. 1993) ("[Defendant] cannot invoke Rule 68 with an ambiguous offer."); *Catanzano v. Doar*, 378 F. Supp. 2d 309, 316-17 (W.D.N.Y. 2005) (questioning whether Rule 68 is applicable at all to injunctive relief, but refusing to enforce because "[i]f an offer of judgment is ambiguous, the offeree obviously cannot make an informed choice whether to accept or reject it").

In addition, pending rate-court litigation, ASCAP and BMI must give music users a compulsory license "without payment of any fee or other compensation," unless a party applies to the court for an interim fee.  Velez Decl. ¶ 24.  Similarly, ASCAP and BMI are precluded from discriminating in license fees or other terms and conditions between licensees similarly situated.  *Id.*  And, before the rate court, the burden of proof remains on ASCAP and BMI to justify their proffered rates.  *Id.*  SESAC's offer of judgment offered RMLC none of these things, even for the arbitration process.

**C.     SESAC's Offer Did Not Moot This Case Because It Did Not Enjoin SESAC From Engaging In *De Facto* Exclusive Dealing With Its Affiliates**

SESAC claims that, by eliminating the provisions in its agreements with its affiliates that expressly preclude direct licensing, it has offered RMLC complete relief on the portion of the injunction that seeks to prohibit SESAC's *de facto* exclusive dealing with its affiliates.  Mem. at 15.  SESAC apparently misunderstands what *de facto* exclusive dealing means.  "An express exclusivity requirement" is not necessary to accomplish *de facto* exclusive dealing.  *ZF Meritor, LLC v Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012).  Courts "look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement 'in the real world.'"  *Id.*

Here, RMLC alleges and the evidence at the preliminary injunction hearing confirmed that, in the real world, SESAC's refusal to offer an alternative to its blanket license that would credit a radio station for its direct licenses (such as an adjustable-fee blanket license, which provides carve-out rights) constitutes *de facto* exclusive dealing wholly apart from the provisions in SESAC's contracts with its affiliates.  Preliminary Injunction Report & Recommendation at 32-33 (Dec. 23, 2013) (ECF No. 60, as adopted in ECF. No. 68); Declaration of Andrew Robinson, Ex. A (Feb. 23, 2015) (RMLC's Supplemental Proposed Findings of Fact ¶¶ 88-95).  Because SESAC will not reduce its license fee when a station buys a direct license from a SESAC affiliate, no radio station has an incentive to negotiate such a license.  Velez Decl. ¶ 26.  A station would simply double-pay for rights to the same work.  Thus, no matter how much SESAC charges for its license, radio stations cannot try to lessen their royalty burden—or avoid SESAC's license altogether—by going straight to the source.  *Id.*  That is why this Court correctly held that SESAC's *de facto* exclusive dealing is plausibly anticompetitive.  Opinion on SESAC's Motion to Dismiss at 20 (June 26, 2014) (ECF No. 74) ("The complaint cogently

portrays how SESAC . . . excludes competitors by . . . discouraging direct licensing by refusing to offer carve-out rights[.]").  RMLC thus seeks an order "enjoining SESAC from entering into *de facto* exclusive contracts with copyright holders[.]"  Compl. at 30.

SESAC's offer to remove express exclusivity terms in its affiliate agreements therefore does not eliminate its *de facto* exclusive dealing conduct.  SESAC did not offer radio stations any carve-out rights.  SESAC Rule 68 Offer, Collins Decl. Ex. A.  The offer did not provide any discount for radio stations that negotiate a direct license whatsoever.  Courts have the power to order parties to deal with each other in certain ways in order to remedy antitrust violations.  *See, e.g.*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985) (affirming injunction requiring owner of a ski resort to offer joint lift tickets with surrounding less popular resorts); *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) (affirming injunction requiring newspaper to accept advertisements from any business that advertised on a rival radio station).

Because the offer of judgment does nothing to preclude *de facto* exclusivity, and RMLC could certainly obtain such relief at trial, the offer does not moot this case.  Compl. at 29 (requesting that SESAC be enjoined "from entering into *de facto* exclusive contracts with copyright holders").

### D.    RMLC's Case Is Not Moot Because SESAC Did Not Offer All Economically Viable Alternatives To Its Blanket License That RMLC Could Win At Trial

SESAC has never offered a non-blanket license.  Velez Decl. ¶ 29.  The most that it sells is an "All-Talk Amendment," which is the same blanket license, but at a 75 percent discount.  *Id.* Only radio stations with all-talk formats—i.e., those lacking any feature music—are eligible for that amendment.  *Id.*  In its request for relief based on SESAC's illegal monopolization, RMLC thus requested "economically viable alternatives to blanket licenses, such as per-program

licenses, blanket carve-out fees, and commercial-only licenses." Compl. at 30. SESAC claims that it has offered "complete relief" on this item of RMLC's requested injunction because it offered to have RMLC choose between SESAC's continuing to offer its All-Talk Amendment or discontinuing that license and instead offering a per-program license. Mem. at 10, 17; SESAC Rule 68 Offer, Collins Decl. Ex. A. And under the SESAC offer, RMLC had to make that choice for the whole radio industry; whatever option it picked the industry would only get that option. SESAC Rule 68 Offer, Collins Decl. Ex. A.

The mere fact that, at trial, RMLC could possibly get injunctive relief that would force SESAC to offer *both* its All-Talk Amendment *and* a per-program license is sufficient, by itself, to defeat this entire motion. And, as set forth above, RMLC surely could get more than that. At that point, SESAC would be an adjudicated monopolist found to have imposed abusive rate hikes at will on the helpless radio industry. To remedy the *de facto* exclusivity problem alone, SESAC would, at a minimum, have to start offering an adjustable-fee blanket license (aka carve-out rights) as an alternative to its existing blanket license. But it did not offer to do so in its Rule 68 offer of judgment.

### E.   The Purported Changes That SESAC Made To Its Website Are Irrelevant To This Motion

SESAC makes much of new changes to its website. Mem. at 7-10. It explains that, in late 2014, no doubt as a result of this lawsuit and probably as a setup for this specific motion, SESAC lifted the 100-song-per-day limit that it had imposed on those using its online repertory search function. *Id.*; Collins Decl. ¶ 3. It also produced a downloadable list of musical works within its repertory, and announced a policy of not suing radio stations that broadcast works newly added to SESAC's repertory within 30 days. *Id.* Apparently keenly aware of the settled body of law that holds that voluntarily stopping unlawful conduct does not moot a case, *Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174 (2000); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008), SESAC claims that it would never abandon these changes because it is in SESAC's "commercial interest" to keep doing them.  Mem. at 4; Collins Decl. ¶¶ 8, 12.  That claim is not credible.  If it were really in SESAC's business interest to make these changes, instead of part of a legal strategy to try to moot this case, SESAC would have done these things years ago.  Detailed complaints about SESAC's monopolistic conduct, including complaints about its website, are well documented.  This case has been pending since 2012 and the *Meredith* case since 2009.  Complaint, *Meredith Corp. v. SESAC, LLC*, No. 09 Civ. 9177 (S.D.N.Y. Nov. 4, 2009), ECF No. 1.  As the Supreme Court has cautioned, "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit."  *United States v. Ore. State Med. Soc.*, 343 U.S. 326, 333 (1952).

But even if the Court were to accept SESAC's changes at face value, they would not moot this case.  The transparency defects in SESAC's repertory were merely one part of its anticompetitive scheme and SESAC's liability does not rise and fall on whether it has purportedly fixed them.  As this Court concluded, "SESAC's lack of transparency *exacerbates* the exclusionary nature of its conduct[,]" which also comprises "obtaining a critical mass of must-have works, selling them exclusively in the blanket license format, [and] discouraging direct licensing by refusing to offer carve-out rights."  Opinion on SESAC's Motion to Dismiss at 20-21 (June 26, 2014) (ECF No. 74) (emphasis added).  So, even if SESAC subsequently ceased obfuscating its repertory and credibly committed not to do it again, its larger anticompetitive conduct remains in place and RMLC's monopolization claim remains live.

16

Even if SESAC disclosed its full repertory, it is all for naught while SESAC continues to engage in *de facto* exclusive contracting.  By refusing to award carve-outs, SESAC makes it economically irrational for radio stations to bypass SESAC, even when they can identify the specific works they need for their businesses.  Velez Decl. ¶ 26.  Until SESAC facilitates direct licensing—which its Rule 68 offer does not offer to do—removing search limits, disclosing song lists, and granting thirty-day grace periods will have little, if any, beneficial effect on competition in the "real world."  *ZF Meritor*, 696 F.3d at 270 (quotation and citation omitted).  SESAC's offer of judgment did not remotely approach the level of complete relief.

## II.   THIS CASE IS NOT MOOT BECAUSE RMLC HAS A PERSONAL STAKE IN THE OUTCOME UNTIL AT LEAST AFTER TRIAL

The above more than suffices for the Court to deny SESAC's motion.  But there is another, more fundamental reason:  the case is not moot because RMLC currently has and will continue to have, at least through trial, an actual, concrete and unresolved dispute with SESAC about the scope of relief that RMLC is entitled to receive.

The doctrine of mootness merely requires that the plaintiff have "a legally cognizable interest, or 'personal stake,' in the outcome of the action" throughout all stages of the case. *Genesis Healthcare*, 133 S. Ct. at 1528 (citation omitted).  "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.*  There is no question that there is now and will continue to be a concrete and unresolved dispute between RMLC and SESAC about the appropriate scope of relief until at least after trial. That is because this Court cannot determine the scope of an appropriate injunction against SESAC until after it hears all of the evidence at trial.

The Supreme Court has made clear that district courts are empowered with discretion to take action necessary to "cure the ill effects of the illegal conduct, and to assure the public freedom from its continuance."  *United States v. Glaxo Grp. Ltd.*, 410 U.S. 52, 64 (1973) (quoting *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950)).  It has further instructed that, in crafting injunctive relief, courts must consider "the high purpose of enforcing the antitrust laws."  *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 131 (1969).  Thus, this Court cannot determine the appropriate components of an injunction without knowing the extent of the violation that RMLC proves at trial, including the scope and elements of SESAC's scheme.  The Court certainly cannot conclude *now*, without the benefit of that evidence, that there is no way that RMLC could obtain the injunctive relief that it seeks.  *Symczyk*, 656 F.3d at 195 (case is moot only when plaintiff could not even "potentially" recover relief it seeks at trial).  If RMLC secures a judgment in its favor at trial, as the above discussion reflects, there undoubtedly will be extensive debate between the parties over the scope of the appropriate remedy for that antitrust violation.  And, relying on established precedents, RMLC certainly will push for more than SESAC offered in its Rule 68 offer of judgment.  That debate, which cannot be resolved now, hypothetically and in a vacuum, necessarily means that RMLC's dispute remains live and that its case is not moot.  *Genesis Healthcare*, 133 S. Ct. at 1528; *see also Hrivnak*, 719 F.3d at 569 (claim is not moot when there are debates over the scope of relief to which the plaintiff may be entitled); *Seymour*, 891 F. Supp. 2d at 738 ("It is illogical that a case could be mooted when there is still a sufficient controversy which would necessitate an extensive amount of fact-finding and weighing of evidence to resolve the dispute.").

## CONCLUSION

For the preceding reasons, the Court should deny SESAC's motion to dismiss in its entirety.

Dated: February 23, 2015

s/ Margaret M. Zwisler
Margaret M. Zwisler (*pro hac vice*)
Jennifer L. Giordano (*pro hac vice*)
Andrew J. Robinson
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Margaret.Zwisler@lw.com
Email: Jennifer.Giordano@lw.com
Email: Andrew.Robinson @ lw.com

Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Alan Devlin (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: Al.Pfeiffer@lw.com
Email: Alan.Devlin@lw.com

Peter J. Mooney
WHITE & WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
Telephone: (215) 864-7164
Facsimile: (215) 789-7664
Email: mooneyp@whiteandwilliams.com

Attorneys for Plaintiff
Radio Music License Committee, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on February 23, 2015, a true and correct copy of the foregoing RADIO MUSIC LICENSE COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION was served on all counsel of record by the Court's electronic filing system (CM/ECF).

<u>s/ Margaret M. Zwisler</u>
Margaret M. Zwisler (*pro hac vice*)
